UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| EDITH ACEVEDO, | ) | No. CV 17-1142-PLA |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 13, 2017, seeking review of the Commissioner's denial of her application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on March 27, 2017, and September 20, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on November 2, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 16, 1974. [Administrative Record ("AR") at 169.] She has no past relevant work experience. [AR at 46, 71.]

On February 28, 2013, plaintiff protectively filed an application for SSI payments, alleging that she has been unable to work since July 1, 2009. [AR at 38, 169-78.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 38, 120-22.] A hearing was held on July 16, 2015, at which time plaintiff appeared with a non-attorney representative, and testified on her own behalf, with the assistance of a Spanish interpreter. [AR at 38, 58-74.] A vocational expert ("VE") also testified. [AR at 71-73.] On December 29, 2015, the ALJ issued a decision concluding that plaintiff was under a disability from February 28, 2013, through March 13, 2015, but that beginning March 14, 2015, her disability ended. [AR at 38-51.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 27-28.] When the Appeals Council denied plaintiff's request for review on December 22, 2016 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires

the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 28, 2013, the date the application was filed and plaintiff became disabled. [See AR at 41.] At step two, the ALJ concluded that from February 28, 2013, through March 13, 2015, the period during which plaintiff was under a disability, plaintiff had the severe impairments of major depressive disorder and post-traumatic stress disorder. [Id.] At step three, the ALJ found that from February 28, 2013, through March 13, 2015, plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listing. [AR at 42.] She also found, as relevant here, that plaintiff had "moderate difficulties in maintaining concentration, persistence or pace." [Id.] The ALJ further found that during that time period plaintiff retained the residual functional capacity ("RFC")[1] to perform a full range of work at all

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps
(continued...)

4

exertional levels but with the following nonexertional limitations:

> She was able to perform simple tasks, but she was not able to complete tasks with detailed instructions on a consistent basis. She was not able to maintain attention and concentration for extended periods of time. She was not able to perform work at a consistent pace without rest periods of unreasonable length or frequency. She was not able to respond to criticism from supervisors in an appropriate manner without decompensating. She had difficulty responding appropriately to changes in the workplace. She would have problems maintaining satisfactory attendance and would have missed work more than three times per month.

[Id.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 46, 71.] She also determined that plaintiff is not able to communicate in English, i.e., she is illiterate in English.[2] [AR at 46.] At step five, based on plaintiff's RFC and vocational factors, the ALJ found that from February 28, 2013, through March 13, 2015, there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed. [Id.] Accordingly, the ALJ found that plaintiff was disabled from February 28, 2013, through March 13, 2015. [AR at 47.]

The ALJ further determined that plaintiff's disability ended on March 14, 2015. [AR at 47.] She concluded that plaintiff had not developed any new impairment or impairments since March 14, 2015, the date her disability ended, and that her current severe impairments are the same as those present from February 28, 2013, through March 13, 2015. [Id.] At step three, the ALJ found that beginning March 14, 2015, plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing, and that medical improvement occurred as of March 14, 2015. [AR at 47, 48.] She also found, as relevant here,

---

[1](...continued)
three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[2] The Court notes that plaintiff's inability to communicate in English was not included in the ALJ's hypothetical to the VE. [AR at 73.] Plaintiff did not raise this issue in the Joint Submission. While an illiterate person is not per se disabled, Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001), an ALJ must consider how a person's literacy level affects work-related functions -- such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision -- when determining whether a person has the RFC to perform other jobs in the national economy at step five in the sequential evaluation process. Pinto, 249 F.3d at 846 n.5.

that plaintiff continued to have moderate difficulties with concentration, persistence, or pace. [AR at 47.] She noted plaintiff's testimony that her anxiety and depression over the death of her husband[3] "continue to have an effect on her motivation to persist in her daily life and work," and "varies depending on [her] medication and on her good and bad days." [AR at 47-48.] As of March 14, 2015, the ALJ found that plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She has the ability to understand and follow simple instructions and complete simple tasks at a competitive pace. She would be able to maintain a normal routine regarding attendance and work productivity. She would not be able to interact with the general public, but she could interact appropriately with coworkers and supervisors.

[AR at 49.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "furniture cleaner" (<u>Dictionary of Occupational Titles</u> ("DOT") No. 709.687-014), "machine feeder" (DOT No. 699.686-010), and "garment bagger" (DOT No. 920.687-018). [AR at 51, 71-72.] Accordingly, the ALJ determined that plaintiff's disability ended as of March 14, 2015. [AR at 51.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) weighed the medical opinion evidence and determined that plaintiff had medically improved after March 13, 2015[4]; (2) evaluated plaintiff's

---

[3] Plaintiff's husband committed suicide with a gun in 2009 and she witnessed him "bleeding out." [<u>See</u> AR at 43-44, 497.] The ALJ found plaintiff's testimony concerning the effects of her symptoms "not entirely credible." [AR at 49.]

[4] For the determination that plaintiff medically improved, the ALJ relied primarily on two treatment notes -- dated March 13, 2015, and April 16, 2015 -- from plaintiff's treating psychiatrist, P. Ureste, M.D. [AR at 49.] The ALJ observed that although "[o]n March 13, 2015 [the date plaintiff's disability purportedly ended], [plaintiff] reported having a period of *worsening* depression after having an elective abortion," after March 13, 2015, and "after restarting Trazadone and coming in for therapy," she had "*significant* improvement" (the ALJ's terminology, not Dr. Ureste's), based on reports to Dr. Ureste of "an *improved* mood [and] *improved* concentration . . . ." [AR at (continued...)

subjective symptom testimony; and (3) relied on a flawed hypothetical question to the VE concerning plaintiff's RFC since March 14, 2015. [JS at 3.] Plaintiff also contends remand is required based on new and material evidence submitted to the Appeals Council. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.     CONCENTRATION, PERSISTENCE OR PACE**

Plaintiff argues that the ALJ erred when she failed to include a moderate limitation in concentration, persistence, and pace in her hypothetical to the VE, despite explicitly finding that plaintiff had moderate difficulties in her ability to maintain concentration, persistence, or pace. [JS at 22 (citing AR at 47-48).] Plaintiff submits that the hypothetical presented to the VE "only limited [plaintiff] mentally to understand and follow simple instructions and complete simple tasks; no

---

[4](...continued)
49 (citing AR at 552-90) (emphases added).] This conclusion begs the question of the actual nature and extent of the purported improvement after March 13, 2015, given the fact that plaintiff had just undergone a period of "worsening depression" as reported *on* March 13, 2015 [AR at 561], as well as Dr. Ureste's findings just two to three months later in his June 2015 assessment of moderate-to-marked limitation in plaintiff's ability to maintain attention and concentration for extended periods, and to perform at a consistent pace without rest periods of unreasonable length or frequency. [AR at 592.] Indeed, as discussed herein, Dr. Ureste also reported in June 2015 that plaintiff's ability to maintain attention and concentration was "moderate . . . with difficulties if prolonged (unable to sustain)." [AR at 593.] As the Ninth Circuit has explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health issues], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . . The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01; see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Although plaintiff contends that two months of treatment notes from Dr. Ureste are "missing" [JS at 7 n.4; see, e.g., AR at 591 (reporting a June 2, 2015, examination by Dr. Ureste for which treatment notes are not included in the AR)], she did not otherwise provide those records or state what those records show. [Id.]

interactions with the public; work that did not involve a lot of changes but had a normal routine that was followed every day with tasks she knew how to do before starting the job; and, no problems interacting with co-workers." [JS at 22-23 (citing AR at 71-72).] Plaintiff submits that these restrictions "say nothing about [her] ability to concentrate over a period of time, persist at tasks, or maintain a particular pace over the course of a workday or workweek." [JS at 23.] She contends, therefore, that the hypothetical did not accurately describe her moderate limitations in concentration, persistence, or pace. [Id. (citing Brink v. Comm'r of Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) ("Brink I") (unpublished)), affirmed by 599 F. App'x 657 (9th Cir. 2015) ("Brink II") (unpublished) (reaffirming holding in Brink I and finding that ALJ erred a second time by again failing to present a hypothetical that described moderate limitations in concentration, persistence, or pace found by the ALJ).[5]] Additionally, plaintiff contends that the error in this case was not harmless because the VE testified that if plaintiff was off-task for as little as 1/3 of the day (the definition provided for a "moderate" impairment in the Questionnaires completed by Dr. Ureste), or absent from work three days a month as found by Dr. Ureste, she could not perform any work. [JS at 24 (citing AR at 72-73).]

Defendant responds that the limitations assessed by the ALJ at steps two or three are not an RFC assessment. [JS at 24 (citing 20 C.F.R. 416.920a, Soc. Sec. Ruling ("SSR")[6] 96-8p).] She asserts that because the ALJ included all the functional capacities assessed in plaintiff's RFC, "and the VE confirmed there was work such an individual could perform, . . . [t]his is all that the ALJ was required to do." [Id.] Defendant further asserts that an ALJ "may reasonably translate 'moderate' mental limitations, . . . into an RFC for 'simple' work." [JS at 24-25 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).] Defendant concludes, therefore, that because the ALJ limited plaintiff to simple instructions and tasks, "that adequately

---

[5] The court in Brink II also specifically pointed out that its decision in Brink I "was not clearly erroneous . . . [and] no intervening change in the law has occurred." Brink II, 599 F. App'x at 658.

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

accommodated moderate limitations in concentration, persistence, and pace" and there was no error. [JS at 25-26 (citations omitted).]

When the medical evidence establishes, and the ALJ accepts, that the claimant has moderate limitations in maintaining concentration, persistence, and pace, that limitation must be reflected in the hypothetical presented to the VE. Brink I, 343 F. App'x at 212. Merely limiting the claimant's potential work to "simple, repetitive work" does not sufficiently account for moderate limitations in concentration, persistence, or pace. Brink I, 343 F. App'x at 212 ("The Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace is not persuasive. Indeed, repetitive, assembly-line work . . . might well require extensive focus or speed."); see also Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (unpublished) ("Although the ALJ found that the [claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the [VE]."). Although Brink and Lubin are unpublished decisions by the Ninth Circuit, and therefore do not establish precedent, the Court finds them to be persuasive authority, and numerous unpublished district court opinions have also followed Brink and Lubin to find error when the ALJ concludes that a claimant has moderate limitation in maintaining concentration, persistence, or pace at step two, but attempts to account for this in the RFC only by limiting the claimant to simple, repetitive work. See, e.g., Sanchez v. Colvin, 2016 WL 1948782, at *5 (C.D. Cal. May 3, 2016); Willard v. Colvin, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016); Bentancourt v. Astrue, 2010 WL 4916604, at *3 (C.D. Cal. Nov. 27, 2010); see also Rosas v. Colvin, 2015 WL 9455475, at *13 (N.D. Cal. Dec. 28, 2015).

The Brink and Lubin line of cases is distinguishable from the line of cases following Stubbs-Danielson, relied on by defendant herein [see, e.g., JS at 24-26], in which the ALJ never made a specific finding that the claimant had moderate limitations in concentration, persistence, or pace. Rather, in Stubbs-Danielson, a physician identified claimant as having "slow pace in thought and action," but found she was still able to "follow three-step instructions." Id. at 1171. The ALJ "translated" the physician's conclusions regarding pace and mental limitations into a

restriction to "simple tasks," and the Ninth Circuit found that the ALJ's "translation" adequately incorporated the medical evidence concerning the claimant's impairments. Id. at 1174. Stubbs-Danielson did not, however, "address the question of whether an ALJ must incorporate her own findings into a vocational hypothetical. Rather, at issue in Stubbs-Danielson was whether the ALJ erred by failing to include in the vocational hypothetical limitations in concentration, persistence, and pace that were both supported and contradicted by the medical evidence in the record." Rosas, 2015 WL 9455475, at *13. Most notably, the ALJ in Stubbs-Danielson -- unlike the ALJ in Brink and in the instant case -- had made "no findings as to that claimant's limitations in concentration, persistence, and pace." Id. (citation omitted).

This case is more similar to Brink and its progeny than to Stubbs-Danielson. Here, the ALJ specifically accepted medical testimony from Dr. Ureste, plaintiff's treating psychiatrist, regarding plaintiff's moderate difficulties in maintaining concentration, persistence, and pace, both before and after March 13, 2015. [See AR at 42, 47, 385, 592.] Dr. Ureste completed two mental impairment assessments of plaintiff. The first Mental Impairment Questionnaire ("2014 Questionnaire") was completed on July 22, 2014 [AR at 382-86], and the second Summary Mental Assessment ("2015 Questionnaire") was completed on June 6, 2015. [AR at 591-93.] Although Dr. Ureste found some slight improvement and some slight decline in other areas of mental functioning,[7] in both the 2014 and 2015 Questionnaires he found that plaintiff exhibited moderate-to-marked difficulty in maintaining attention and concentration for extended periods. [AR at 385, 592.] He also reported in both that she had a moderate-to-marked limitation in her ability to perform at a consistent pace without rest periods of unreasonable length or frequency, and that she would be absent from work as a result of her impairments more than three times per month. [Id.] The ALJ accepted that plaintiff had at least moderate limitations in concentration, persistence, or pace, but did not include these limitations in her hypothetical to the VE.

---

[7] For instance, plaintiff's ability to carry out simple one-to-two step and detailed instructions improved from "moderate-to-marked" in 2014 to "moderate" in 2015; her ability to understand and remember detailed instructions declined from "moderate" in the 2014 Questionnaire to "moderate-to-marked" in the 2015 Questionnaire.

Based on the foregoing, although the medical evidence supported the ALJ's finding of *at least* moderate difficulties in plaintiff's ability to maintain concentration, persistence, and pace throughout the relevant time period, she failed to incorporate into the hypothetical to the VE the moderate difficulties in these areas that she had specifically identified. She also failed to provide an explanation as to how a restriction to "simple instructions" and completing "simple tasks at a competitive pace" accounted for plaintiff's moderate difficulties in concentration, persistence, or pace. Indeed, the VE testified that an individual who would be "working either at a slower pace or would be off-task about one-third of the day,"[8] or who would be absent at least three days per month, would be precluded from any work. [AR at 72.] Thus, it was error for the ALJ to fail to include plaintiff's moderate difficulties in concentration, persistence, or pace in the hypothetical to the VE, and the error was not harmless. Remand is warranted on this issue.

**B.    PLAINTIFF'S REMAINING ISSUES**

Because the matter is being remanded based on the ALJ's failure to include plaintiff's difficulties in concentration, persistence, or pace in the hypothetical to the VE, the Court will not address plaintiff's remaining issues herein.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it

---

[8] "Moderate-to-marked" was defined in both Questionnaires as reflecting symptoms that "*frequently interfere* with ability (*Frequent* = 1/3 - 2/3 of an 8-hr. workday)," while "Moderate" was defined as reflecting symptoms that "*occasionally interfere*" with ability," i.e., "up to 1/3 of an 8-hr. workday." [AR at 385, 592.]

11

is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ determined that plaintiff is illiterate in English, and that after March 13, 2015, she had moderate difficulties in concentration, persistence or pace, but failed to provide a complete hypothetical to the VE including these limitations, the ALJ on remand shall clarify her hypothetical to the VE to include (1) the fact that plaintiff is illiterate in English; and (2) that she has moderate difficulties in concentration, persistence or pace. See Brink I, 343 F. App'x at 212-13. The ALJ shall then determine, at step five, with the assistance of a VE, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[9]

/
/
/
/
/
/
/
/
/
/
/

---

[9] Nothing in this decision is intended to disrupt (1) the ALJ's findings that before March 14, 2015, plaintiff was disabled; (2) that plaintiff had no past relevant work; (3) that plaintiff is illiterate in English; (4) that after March 14, 2015, plaintiff had *at least* the same severe impairments that she had prior to March 14, 2015; and (5) that both before and after March 13, 2015, plaintiff had *at least* moderate limitations in concentration, persistence, or pace.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 23, 2018

*Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE